UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | No. 2:07-CR-110 |
| V. | ) | District Judge Greer |
| | ) | Magistrate Judge Inman |
| GARY KEVIN ADKINS | ) | |

## REPORT AND RECOMMENDATION

The defendant has filed a motion to suppress evidence seized upon the execution of a search warrant on July 6, 2007, as well as evidence seized as a result of warrantless searches on October 26, and November 2, 2007. He also asks that statements he made on each of these dates be suppressed. (Doc. 16).

Defendant's motion was referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on March 28, 2008.

### *THE JULY 6, 2007 SEARCH WARRANT*

On July 6, 2007, defendant's residence at 5957 Old White Pine Road in Morristown, Tennessee, was searched by agents of the Tennessee Bureau of Investigation ("TBI") and Hamblen County law enforcement officers, pursuant to a search warrant issued by the Honorable John Dugger, Judge of the Criminal Court for Hamblen County, Tennessee. Defendant raises two issues regarding that search warrant:

First, although the warrant was issued on July 6, 2007, the agents' return indicates that the

warrant was executed on June 6, 2007, a month prior to the issuance of the warrant itself. Obviously, this was a typographical error and is of no legal significance.

Second, defendant argues that there was no probable cause for the issuance of the warrant.

When a defendant asserts that a search warrant was not supported by probable cause, the reviewing judge is charged with the responsibility of determining if the affidavit filed in support of the application for the warrant states probable cause. That determination is made on the basis of the affidavit itself; either it states probable cause, or it does not.

On July 6, 2007, Agent Gregg McNamara of the TBI submitted his affidavit to Criminal Court Judge Dugger to support the application for the search warrant. In that affidavit, Agent McNamara stated:

(1) On July 6, 2007, he received information from a confidential informant that the defendant was selling methamphetamine in Hamblen County;

(2) The confidential informant told him that defendant "routinely" distributed methamphetamine from 5957 White Pine Road, in Morristown, Tennessee;

(3) On July 6, 2007, the confidential informant made a recorded phone call to defendant and arranged to purchase one-half ounce of methamphetamine from defendant for $1,000.00;

(4) Fifteen minutes later, in another phone call, defendant told the confidential informant that he would not be able to personally deliver the methamphetamine, but he would send someone else to meet the confidential informant at the Hardees Restaurant on Highway 25E in Morristown;

(5) Shortly after this telephone conversation, TBI Agent Jim Williams, who was surveilling defendant's residence at 5957 Old White Pine Road, followed a green Dodge pickup truck, bearing

2

Tennessee tag 120-2CV and registered to defendant, from 5957 Old White Pine Road to the parking lot at the Hardees Restaurant on Highway 25E in Morristown;

(6) The confidential informant was outfitted with a digital recording device;

(7) Agent McNamara and the confidential informant drove from the Hamblen County jail parking lot to the Hardees Restaurant on Highway 25E and, during that trip, the confidential informant placed a phone call to defendant, stating that he would be arriv-ing late at the restaurant. The informant asked defendant to confirm the description of the vehicle the confidential informant should "meet with;"

(8) Defendant advised the confidential informant that the drug courier would be at the Hardees parking lot and driving a green pickup truck;

(9) When Agent McNamara and the confidential informant arrived at the Hardees Restaurant parking lot, the confidential informant entered the green Dodge pickup truck and talked with an unknown white male;

(10) After a short meeting with this individual, the confidential informant returned to McNamara's vehicle and turned over to him a small plastic baggie that contained a crystalline substance which field tested positive as methamphetamine;

(11) As the green Dodge pickup truck left the parking lot of the Hardees Restaurant, it was followed back to 5957 Old White Pine Road in Morristown.

Defendant points out that Agent McNamara's affidavit does not state a "history," i.e., the reliability, of the confidential informant. He also argues that McNamara's affidavit does not state that he was familiar with Adkins' voice, and that there was nothing in the affidavit to

3

indicate to Judge Dugger that, more likely than not, the individual with whom the informant had talked was the defendant.

Affidavits filed in support of search warrants are to be judged in a common-sensical, and not hyper-technical, manner. Whether or not probable cause exists is to be determined from the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The informant's reliability is irrelevant as far as this search warrant is concerned. Whether or not defendant was the individual with whom the confidential informant spoke on the telephone makes no difference as far as probable cause to search the premises at 5957 Old White Pine Road is concerned. The Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular *place*." *Gates, supra*, at 238. [Italics supplied]. The confidential informant spoke with *someone* at Adkins' residence, and a drug deal was set up. Regardless of the identity of the individual with whom the informant spoke, drugs were to be transported from 5957 Old White Pine Road to the Hardees Restaurant in a green Dodge pickup truck that was registered to defendant. The affiant, Agent McNamara, personally observed and heard all the foregoing. Thus, from this affidavit, it is clear that someone at 5957 Old White Pine Road had methamphetamine for sale; that "someone" agreed to sell a thousand dollars' worth of methamphetamine to the confidential informant; that "someone" said that it would be delivered to the parking lot of the Hardees Restaurant on Highway 25E in Morristown by a person driving a green Dodge pickup truck owned by defendant; methamphetamine in fact

was delivered to the Hardees parking lot by someone driving that green Dodge pickup truck;[1] that pickup truck was followed back to defendant's house at 5957 Old White Pine Road in Morristown. Under the totality of the circumstances, there was an abundance of probable cause to believe that methamphetamine, and evidence of methamphetamine trafficking, would be found at that premises.

### *THE JULY 6, 2007 STATEMENT*

During the search of defendant's house pursuant to Judge Dugger's search warrant, defendant made incriminating statements.

As an initial matter, there is a single sentence in the second paragraph of page five of his motion that suggests that defendant's statement was made in response to a "coercive" environment. Nothing else in defendant's motion addresses this issue. Defendant's counsel candidly admitted that this was a "cut-and-paste" error, and that he was not claiming that defendant's statement was the result of coercion. Thus, this particular matter will be addressed no further.

Defendant was advised of his *Miranda*-rights, and he acknowledged that he understood those rights. Although officers did not provide to him a written form which he could sign in acknowledgment that he was given his *Miranda* rights and wished to waive same, the proof reveals that he in fact was advised of his constitutional rights and that he voluntarily gave a statement with full knowledge of those constitutional rights. Defendant does not argue to the contrary.

It is defendant's argument that he had manifested a clear intent to cooperate with the law

---

[1] Defendant argues that a "field test" is not admissible in evidence. Even if so, the question here is one of *probable cause*. Under all the circumstances, including the field test, it is highly probable that the substance was methamphetamine.

enforcement authorities, as a result of which the United States should not be allowed to use his statements against him, relying upon Rule 410 of the Federal Rules of Evidence and Rule 11 of the Federal Rules of Criminal Procedure.

Rule 410 of the Federal Rules of Evidence prohibits the United States from intro-ducing against the defendant any statement "made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding [a plea of guilty which is ultimately withdrawn or a plea of *nolo contendre*]." Defendant undisputably wished to cooperate with the law enforcement authorities; indeed, that was the prudent thing to do under the circumstances. But there were no "plea negotiations" underway at the time, and he was promised nothing by the law enforcement agents except that they agreed to pass on to the appropriate prosecutor the fact that defendant had cooperated. Nothing occurred that remotely implicated F.R.E. 410 and F.R.Crim.P. 11.

### *THE OCTOBER 26, 2007 SEARCH AND STATEMENT*

On October 26, 2007, the Jefferson County Sheriff's Department had an outstanding warrant for defendant's arrest for aggravated assault. Chief Deputy Bud McCoig contacted Agent Richard Walker of the Tennessee Bureau of Investigation and requested that Walker accompany McCoig to defendant's home in Hamblen County to execute the arrest warrant. Ultimately, Lieutenant Blair and Narcotics Detective Hurt of the Morristown Police Department, as well as another deputy from Jefferson County, went to defendant's residence at 5957 Old White Pine Road in Morristown to execute the Jefferson County arrest warrant. In light of the on-going investigation regarding defendant's methamphetamine trafficking, and because defendant lived in Hamblen County, there was nothing particularly strange about the Jefferson County officers being accompanied by officers

of the Morristown Police Department and the Tennessee Bureau of Investigation.

When the officers arrived at defendant's residence, they took him into custody. Agent Walker asked defendant if he recalled his constitutional rights, and defendant answered that he did. Agent Walker then asked defendant for permission to search the premises, and defendant agreed. There was no written form submitted to defendant for his signature to signify that he was advised of his constitutional rights and that he was voluntarily consenting to a search of his residence, but the court finds that he was advised of his rights and that he voluntarily consented to the search.

Defendant's residence and an outbuilding were searched. One of the officers asked if a recreational vehicle parked in the driveway had been searched. At that point defendant stated that what they were looking for would be found in that vehicle. Indeed, he described in some detail where in the RV it would be found.

The officers found methamphetamine in the RV in the place described by defendant.

At that point, defendant was arrested for possession of Schedule II drugs (methamphetamine) for resale and transported to the Morristown Police Department.

The issue that defendant raises in this portion of his motion to suppress is that the consensual search of the RV and the resultant discovery of the methamphetamine flowed from an ostensible execution of the Jefferson County arrest warrant, notwithstanding that defendant was never transported to Jefferson County. In other words, defendant suggests that the Jefferson County arrest warrant was but a subterfuge to allow the Morristown police officers to search his residence as a purported search incident to an arrest. Since he was never arrested under the Jefferson County warrant, so defendant argues, it follows that there could be no lawful search incident to his arrest.

Although he does not explicitly so state in his motion, defendant necessarily argues that the officers' entry upon his property was itself unlawful inasmuch as that entry was based upon an arrest warrant that was never executed, as a result of which his subsequent consent to search his premises was invalid.

The proof is undisputed that the Jefferson County warrant for defendant's arrest on a charge of aggravated assault was both outstanding and valid. Initially, defendant was taken into custody on the basis of that warrant. To be sure, the officers, especially the Morristown police officers, were perhaps even more interested in the possibility that they would find evidence of drug dealing when defendant was arrested on that Jefferson County warrant. However, that in no way vitiates the legitimacy of the Jefferson County arrest warrant and the officers' presence on defendant's property to execute that warrant. In the same vein, the fact that defendant ultimately was arrested by the Morristown police officers and transported to the Morristown Police Department for the commission of another crime - possession of methamphetamine for resale - does not invalidate the Jefferson County arrest warrant and its execution. In a manner of speaking, the Jefferson County arrest warrant was more or less forgotten, and admittedly no one ever wrote upon it that it had been executed. Indeed, as far as is known, defendant was never actually transported to Jefferson County on the basis of that warrant.

An "arrest," of course, is a physical act; a law enforcement officer arrests a person by eliminating his freedom of movement. *Henry v. United States*, 361 U.S. 98, 103 (1959). In other words, the arrestee is taken into custody. An arrest warrant is simply an instruction by a judge to a law enforcement officer to arrest a particular person. In the normal course of events, the executing officer in some fashion notes on that written arrest warrant how, when, and where he carried out the

instructions of the judge. That, of course, is the "return." That return (or lack of a return) makes the arrest no more nor no less valid; an arrest either occurred, or it did not.[2] This was a valid arrest warrant, and it was executed, notwithstanding the lack of a written memorialization of that execution. And it was of no legal significance that Deputy McCoig acquiesced in the Morristown Police officers' actions in arresting defendant on the more serious methamphetamine charge.[3]

After defendant's arrest on the Jefferson County warrant, and after being advised of his constitutional rights, defendant voluntarily and knowingly consented to a search of his property, as well as telling the officers that methamphetamine would be found within the recreational vehicle.

### *THE NOVEMBER 2, 2007 SEARCH AND STATEMENT*

On November 2, 2007, TBI Agent Walker was charged with the responsibility of executing a warrant for defendant's arrest based upon his indictment by the Hamblen County Grand Jury. Agent Walker contacted defendant's bail bondsman who arranged to meet defendant in the parking lot at the Colboch Harley-Davidson Motorcycle Shop in Morristown. As the bondsman and defendant were talking in the parking lot, Agent Walker arrived and placed defendant under arrest.

Defendant had driven his motorcycle to the Colboch dealership. Another officer who

---

[2]There is an abundance of cases that hold that the failure to make a return on a search warrant does not invalidate the search warrant. *See, e.g., Evans v. U.S.*, 242 F.2d 534, 536 (6th Cir. 1957): "[T]he return of a warrant is a ministerial act and any failure therein does not void the warrant." This court cannot discern any logical difference between failure to make a return on a search warrant and a failure to make a return on an arrest warrant.

[3]Defendant does not argue that the Morristown officers lacked probable cause to make a warrantless arrest based on his possession of methamphetamine for resale.

accompanied Walker asked defendant if his motorcycle had a storage compartment beneath the seat, and defendant responded that it did not. Walker, however, saw a lock beneath the seat on the motorcycle and realized that there was a storage compartment located there. As the other officer was preparing to put defendant into the police cruiser, Agent Walker asked defendant to hand over the keys to the storage compartment. The defendant did so, and Agent Walker discovered a quantity of methamphetamine in the compartment.

Defendant argues that (1) he was not on or using the motorcycle at the time of his arrest; (2) he was a significant distance from the motorcycle when he was arrested; and (3) the motorcycle was not in an area subject to his immediate control. He therefore asserts that the search of the motorcycle was invalid. The United States contends that he consented to the search.

Defendant subsequently was transported to the Morristown Police Department where he signed a written form acknowledging that he understood his constitutional rights and that he was willing to make a statement.[4] Defendant therefore made a written statement in which he said that "[t]he meth that was found on my motorcycle belongs to me. I think that it is about one-half pound. The meth was delivered to me from Arizona on October 31, 2007. I paid $6000 for eight and one-half oz.'s."[5] Defendant also executed a written "consent to search" his home.[6] As a result of the search of defendant's home, law enforcement agents seized two hundred twenty-six grams

---

[4]Ex. 6 to defendant's motion.

[5]Ex. 7 to defendant's motion.

[6]Ex. 8 to defendant's motion.

of methamphetamine and Twenty Thousand Three Hundred ($20,300.00) in currency.[7]

All the evidence seized on November 2, 2007, as well as defendant's statement, commenced with the discovery and seizure of the methamphetamine in the storage com-partment beneath the seat of defendant's motorcycle. TBI Agent Walker was the witness who addressed the circumstances of that search, and his testimony is reproduced hereafter, verbatim:

> [By AUSA Hebets]:
>
> Q. And what happened when you approached Mr. Adkins?
> A. He's just taken into custody at that point.
> Q. What type of vehicle was he driving or using that day?
> A. He was on a motorcycle, and it was parked in one of the parking places there, and the bonding gentleman had parked their [sic] vehicle behind it so he couldn't, I guess, if he saw us, try to get way [sic].
> Q. Did he make any attempt to run or flee?
> A. No.
>
> * * *
>
> Q. And once Mr. Adkins was placed under arrest, what happened then?
> A. Lieutenant Blair found some money on his person in his shoes, and we also found a quantity of methamphetamine on, in the – under the back seat on this motorcycle.
> Q. And how did you search the motorcycle?
> A. Lieutenant Blair had asked him if there was a compartment underneath his backseat. It's an oriental motorcycle, I don't know if it's a Honda, Kawasaki, a sport bike, and Mr. Adkins said there was not one. They were getting ready to put him into a police car, and I noticed that there was a key lock in the area of the back seat, and so I had Mr. Adkins give me the keys to open that compartment up.
> Q. And did he voluntarily give you the key and allow you to search the motorcycle?
> A. Yes.
> Q. Did he tell you, ever say, no, don't search it, you can't search it, I'm not giving you the key, anything like that?
> A. No.
> Q. All right. Did Mr. Adkins give you any consent to search any other location on that date?
> A. He told us we could go back and look at his residence again.
> Q. And this is – is this the same residence that you had been to or testified to earlier

---

[7]Ex. 9 to defendant's motion.

on two different occasions?
A. Yes.
Q. What happened with Mr. Adkins after he was placed in the patrol car, where did he go?
A. To the Morristown Police Department.
Q. And are you aware if an interview was conducted of Mr. Adkins at that time?
A. I believe so. I think Lieutenant Blair and myself spoke with him again.
Q. Okay, and I'm going to ask you to take a look at, for the records these were attached as Exhibit 6 to the defendant's motion, this is a Miranda waiver form from Morristown; is that correct?
A. Yes.
Q. And is that your signature right under there, if you can see it?
A. Yes, it appears to be. It's kind of grainy on the screen, but it appears to be.
Q. And this is Mr. Adkins' signature right there; is that correct?
A. Yes.
Q. All right. Mr. Adkins was advised of his rights and agreed to speak again; correct?
A. Yes.
Q. All right, and he did give a statement to you and Lieutenant Blair?
A. That's correct.
Q. And this, for the record, was admitted or attached as Exhibit 7 to the defendant's motion which again contains the statement that Mr. Adkins gave?
A. Yes.
Q. All right, and then did you have Mr. Adkins actually fill out a consent to search his property, the trailer and property at his –
A. I don't recall. I think Lieutenant Blair did, I think.
Q. All right. Let me ask you to take a look at this. Do you see your signature on this page?
A. I do, yes.
Q. All right, and this is a consent to search form; is that correct?
A. Yes, Ma'am.

Requiring some clarification, the magistrate judge questioned Agent Walker:

Q. [By Magistrate Judge Inman]:

Q. You go to execute the arrest warrant at Colboch Harley Davidson, he's out there talking to his bondsman?
A. Yes, sir.
Q. You arrest him on that warrant?
A. Yes, sir.
Q. All right. Now, what's the deal on the compartment under the motorcycle seat?
A. I noticed there being a compartment there, just being familiar with motorcycles, and had heard Mr. Adkins say that there was not one there; and I knew better, that

12

there would be one under that seat; so as they were getting ready to leave in the police car, I just asked Mr. Adkins for the keys to the motorcycle because I was going to look underneath that seat on the rear of it.
Q. You told him, I want the keys, I'm going to look under the seat?
A. Yes.
Q. And he handed them over?
A. Yes.

\* \* \*

A. We didn't ask him about the consent of the house until after we got to the police department.
Q. Okay. Until After these written [waiver and consent] forms were executed?
A. Yes sir.

The search of the motorcycle was made without a warrant. As a result, the burden is upon the United States to prove that the search comes within some exception to the Fourth Amendment's requirement for a warrant. *Lego v. Twomey*, 404 U.S. 477 (1972). One such exception, of course, is that the search was consensual. The issue is *extremely* close regarding defendant's consent. Defendant turned over the keys to the storage compartment to Agent Walker, and he voiced no objection as he did so. On the other hand, he was under arrest and in custody. Further, Agent Walker did not ask him, "May I have the keys and may I look in the storage compartment?" Rather, he testified during his examination by AUSA Hebets that he "had" Mr. Adkins give him the keys to the storage compartment, a word that suggests a command, not a request. Further, during his examination by the magistrate judge, he said that he "asked" Mr. Adkins for the keys. However, in that same sentence, he said that he did so "because I was going to look underneath that seat . . .," words that suggest he had an intent to look under that seat regardless of any contrary wishes by Mr. Adkins. Recalling that the burden is upon the United States to prove that the defendant *voluntarily* consented

to a search of the motorcycle, the proof does not support the United States' position.

Presumably the Morristown Police Department would not have abandoned defendant's motorcycle in the parking lot of a business, and therefore would have impounded it for its safekeeping. Also, it is assumed that the Morristown Police Department, as a matter of its policies and procedures, would have performed an inventory search of this motorcycle to ensure that defendant at some later date would not make a claim that valuable property was removed from the motorcycle while in the custody of the police department. An inventory search would have revealed methamphetamine, and the "inevitable discovery doctrine" would have obviated any problems with the initial warrantless search and discovery of the methamphetamine. *See, Nix v. Williams*, 467 U.S. 431, 439 (1984). However, the court's assumption that this motorcycle was impounded and that it would have been subjected to an inventory search is no substitute for proof, and the United States failed to present any in this regard.

When the occupant of a vehicle is lawfully arrested, the passenger compartment of that vehicle, including any containers within it, may be searched without a warrant or further showing of probable cause. *See, York v. Belton*, 453 U.S. 454 (1981). However, the Sixth Circuit has held that *Belton* applies only "where the police initiate contact while the defendant is within his automobile . . . ." *United States v. Strahan*, 984 F.2d 155, 159 (6th Cir. 1993). Agent Walker testified that when he arrived to arrest defendant, defendant's motorcycle was parked and defendant was standing in the parking lot talking to his bail bondsman. Thus, the *Belton*-exception to the Fourth Amendment's requirement for a search

warrant does not apply.

Neither does the "automobile exception" apply. A vehicle may be searched without a warrant, even in non-exigent circumstances, so long as the vehicle is mobile and law enforcement officers have probable cause to believe that it contains incriminating evidence. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Arguably, Agent Walker had probable cause to believe that defendant's motorcycle contained contraband. First of all, he had prior experience with defendant, and knew that defendant sold significant quantities of methamphetamine. After all, Agent Walker was one of the officers involved in the search of defendant's home on July 6, 2007, during which two pounds of methamphetamine had been seized, as well as One Hundred Twenty Five Thousand ($125,000) Dollars in currency. Additionally, in direct response to a question by one of the arresting officers, defendant lied regarding the existence of a storage compartment beneath the seat of the motorcycle. His lie, coupled with Agent Walker's knowledge of defendant's methamphetamine trafficking, arguably constituted probable cause to believe that methamphetamine or some other evidence of drug trafficking was concealed within the storage compartment. If this motorcycle had been readily mobile, the "automobile exception" enunciated in *Maryland v. Dyson* would apply, and defendant's motorcycle could have been subjected to a search that was "as thorough as a magistrate could authorize in a warrant." *United States v. Ross*, 456 U.S. 798 (1982). However, this motorcycle was not "mobile;" it's owner and operator was under arrest and was being transported to the Morristown Police Department. Absent someone stealing the motorcycle, there is no danger that it would have disappeared. And even if there

was a threat of theft, whether by happenstance or at defendant's direction, it would have been a simple matter to leave an officer with the motorcycle until a warrant was obtained.

If the operator of a vehicle has just been arrested and there is probable cause to believe that the vehicle contains contraband, the officers may conduct a warrantless search of that vehicle, even if it is not mobile, *if there are exigent circumstances.* "[The] word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire*, 403 U.S. 443, 461 (1971). Inasmuch as the defendant was under arrest and incapable of immediately operating his motorcycle, and since the police had ample opportunity to safeguard the motorcycle, including impounding it, the search of defendant's motorcycle cannot be justified as one incident to an arrest. The warrantless search of the storage compartment of the motorcycle, although arguably supported by probable cause, was not simultaneously supported by exigent circumstances.

The United States has failed to prove that the search of the motorcycle storage compartment comes within any exception to the Fourth Amendment's requirement for a warrant. Therefore, any evidence of the contents of that storage compartment should be suppressed.

Defendant's subsequent statement regarding the contents of the storage compartment, although made after he was advised of his constitutional rights, followed upon the heels of the unlawful seizure of the methamphetamine and was fatally tainted by it. On the other hand, defendant's consent to the search of his home was not so related to the seizure of the methamphetamine that the fruits of that search should be suppressed. Further, prior to the

time defendant consented to the search of his home, he had been advised of his constitutional rights.[8] Evidence that was obtained as a result of an illegal search may be admitted if the causal connection between the illegal search and discovery of challenged evidence is so attenuated as to dissipate the taint. *Wong Sum v. United States*, 371 U.S. 471, 488 (1983). There is precious little, if any, connection between defendant's consent to search his home and the seizure of the methamphetamine from his motorcycle. Moreover, defendant had been advised of his constitutional rights before he consented to the search of his home; if there was a causal connection between the discovery of the methamphetamine in the motorcycle storage compartment and his subsequent consent to search his home, however tenuous that causal connection may have been, it clearly was broken when he was advised of his constitutional rights.

*CONCLUSION*

It is respectfully recommended as follows:

(1) The defendant's motion to suppress evidence seized on July 6, 2007, pursuant to Criminal Court Judge Dugger's warrant should be denied;

(2) Defendant's motion to suppress his statements made on July 6, 2007, should be denied;

(3) Defendant's motion to suppress evidence seized after a search of his residence premises on October 26, 2007, and his statements made on that day, should be denied;

---

[8] Not that it really mattered; defendant had been advised of his constitutional rights multiple times in the recent past, and had consented to searches thereafter. Defendant was no neophyte.

17

(4) Defendant's motion to suppress evidence of the contraband seized on his motorcycle on December 2, 2007, should be granted;

(5) Defendant's motion to suppress his statement regarding the contraband seized from his motorcycle on November 2, 2007, should be granted;

(6) Defendant's motion to suppress evidence seized as a result of the search of his residence on November 2, 2007, should be denied.[9]

Respectfully submitted,

        s/ Dennis H. Inman  
United States Magistrate Judge

---

[9] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).